UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-46-SDJ |
| | § | |
| CHRISTY AARON (21) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Christy Aaron's Motion for Reduction in Sentence Pursuant to the First Step Act of 2018 [Under] 18 USC 3582 (c)(1)(A)(i) 1B1.13, (Dkt. #1226), and Motion for Reconsideration of Deviation of Compassionate Release and Sentence Reduction, (Dkt. #1236). Having considered the motions, the record, and the applicable law, Aaron's motions are **DENIED**.

**I. BACKGROUND**

On July 2, 2020, Aaron was sentenced to a 128-month term of imprisonment with five years of supervised release. (Dkt. #1065). She pleaded guilty to conspiracy to possess with intent to distribute and distribution of methamphetamine in violation of 21 U.S.C. § 846. (Dkt. #972 ¶ 2). As part of this conspiracy, Aaron supplied "co-conspirators with ounce quantities of methamphetamine from various sources, which was imported from Mexico, which would then be distributed to other co-conspirators and co-defendants during the term of the conspiracy in the Eastern and Northern Districts of Texas." (Dkt. #974 ¶ 6).

Less than two years into her sentence, Aaron filed a motion for compassionate release, citing risks to her health associated with the COVID-19 pandemic. (Dkt. #1184). The Court denied that motion, finding that "Aaron has not shown how

1

her medical conditions prevent her from providing self-care." (Dkt. #1216 at 12). Indeed, the Court found that "Aaron's health issues have been effectively managed with medication and clinician evaluations every six to twelve months." (Dkt. #1216 at 12). As a result, her "concerns about the risks of COVID-19," combined with her chronic medical conditions, were insufficient to constitute extraordinary and compelling reasons for release. (Dkt. #1216 at 12). Moreover, the Court found that "her motion for compassionate release would [independently] fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against her." (Dkt. #1216 at 14).

Five months after the Court entered its Order denying her motion for compassionate release, Aaron filed another motion for compassionate release, making the same arguments about her risk associated with COVID-19 and her chronic medical conditions. (Dkt. #1226 at 4–16). Five months after that, she filed another motion for compassionate release, making the same medical-condition-related arguments, along with arguments based on her rehabilitation and her sentence calculation. (Dkt. #1236 at 1–3). Aaron requests that the Court reduce her sentence, presumably to time served, and order her released from prison. At this time, Aaron has served less than two-thirds of her sentence.

## II. LEGAL STANDARDS

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That

is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims." *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district court's[1] jurisdiction are through (1) compassionate-release motions;[2] (2) motions for sentence reduction based on a change in the sentencing guidelines;[3] (3) Rule 35(a) motions to correct clear error within fourteen days of sentencing;[4] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[5] (5) Rule 36 motions

---

[1] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[2] 18 U.S.C. § 3582(c)(1)(A).

[3] 18 U.S.C. § 3582(c)(2).

[4] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[5] *Id.*; *see also* FED. R. CRIM. P. 35(b).

3

to correct clerical errors;[6] (6) habeas motions;[7] or (7) any other motion "expressly permitted by statute."[8] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks other relief, they should specifically identify where that relief is expressly permitted by statute.

**B. Motions for Compassionate Release**

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id.* § 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing

---

[6] FED. R. CRIM. P. 36.

[7] 28 U.S.C. § 2255.

[8] 18 U.S.C. § 3582(c)(1)(B).

4

Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires sentence reductions to be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings"). And the 2023 amendments[9] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[10] U.S.S.G. § 1B1.13(a);

---

[9] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[10] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among others,

5

*see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[11] which must also be considered by the court:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

[11] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion … where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Based on Aaron's arguments, the Court believes that she seeks to invoke her medical circumstances and rehabilitation as extraordinary and compelling reasons for relief.

**C. Defendant's Medical Circumstances (U.S.S.G. § 1B1.13(b)(1))**

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic

7

lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g., United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g., United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without

8

which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g., United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

9

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[12] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no

---

[12] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

10

longer the case: Both international and domestic health authorities, including the World Health Organization,[13] the United States Centers for Disease Control and Prevention,[14] and the U.S. Federal Government,[15] have made clear that the COVID-19 pandemic has ended.[16] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### D. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020).

---

[13] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[14] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[15] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[16] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

## II. DISCUSSION

### A. Jurisdiction over Improper-Sentencing Arguments

Aaron claims that her sentencing was improper because "'the base offense level starting point was incorrectly applied' by the Court at sentencing." (Dkt. #1249 at 11). She therefore asks the Court to "recalculate [her base offense level] removing the distinction between Methamphetamines' actual and mixture and recalculate her sentencing without the distinction between actual and mixture." (Dkt. #1249 at 11).

None of the statutes listed above allows this Court to resentence a defendant based on their perceived issues with how the Sentencing Guidelines were applied to the facts of their case. And Defendant does not cite to, nor is the Court aware of, any other statute that expressly permits such a resentencing. The Court thus concludes that it lacks jurisdiction to consider this claim.

### B. Administrative Exhaustion

Turning to exhaustion, the Government concedes that Aaron has exhausted her administrative remedies. (Dkt. #1249 at 3) ("Because more than 30 days have passed since Aaron's request to her warden, she has satisfied the administrative

exhaustion requirement as to her claims as set forth in 18 U.S.C. § 3582(c)(1)(A).").

The Court agrees and finds that Aaron has exhausted her administrative remedies.

**C. Compassionate-Release Arguments**

Turning to Aaron's substantive arguments, her requests for compassionate release fall under Sections 1B1.13(b)(1)(C) and 1B1.13(b)(1)(D)(i). She claims that her chronic medical conditions—uterine cancer, liver cancer (remission), anemia, asthma, depression, and a history of smoking—are not able to be effectively managed by her facility. But her medical records tell a different story:

> According to the records, the defendant, who is 43 years old, was last seen in the Chronic Care Clinic on February 27, 2023, and was assessed for asthma ("ON ALBUTEROL AND MOMETASONE" "WORKING WELL"), anxiety and depression ("ON PROZAC AND PRAZOSIN" "WORKING WELL"), anemia ("S/P HYSTERECTOMY" "ON IRON PILLS" and migraine ("SINCE AGE 24" "ONCE A WEEK" "WILL GIVE TRIAL OF DEPAKOTE"). In February 2022, Aaron was "sent to ob/gyn for leep procedure. Path report showed CIN III." Her uterus was removed by hysterectomy the following July. Aaron's liver cancer remains in remission. She is classified as Care Level 1 "healthy or simple chronic care."

(Dkt. #1249 at 9) (internal citations omitted). Thus, Aaron's medical records include nothing to suggest that her conditions are deteriorating, that her facility is unable to provide the care she needs, or that her ability to care for herself has been sufficiently diminished. Aaron's medical conditions thus do not constitute an extraordinary or compelling reason for relief. *Ani*, 2024 WL 50775, at *4 (rejecting claim when there was "no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished"). Moreover, because Aaron

13

has not developed any new medical conditions since the Court's Order denying her first motion for compassionate release, (Dkt. #1216), the Court also rejects this claim for the same reasons it provided in that Order. (Dkt. #1216 at 10–14).

Aaron's other arguments relate to how she has a higher risk of injury or death from the COVID-19 pandemic given her chronic medical conditions, which constitutes an extraordinary and compelling reason to reduce her sentence. *E.g.*, (Dkt. #1226 at 4–10, 12–16); (Dkt. #1236 at 2–3). But the Fifth Circuit has repeatedly denied motions citing chronic health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). Even if that weren't the case, the COVID-19 pandemic has ended and no longer constitutes an extraordinary and compelling reason for compassionate release. *See supra* notes 13–16 and accompanying text. Aaron has thus failed to prove extraordinary and compelling reasons support her requested sentence reduction.

Finally, because Aaron's medical circumstances are neither extraordinary nor compelling, her rehabilitation efforts, (Dkt. #1226 at 10–11), also fall short: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Shkambi*, 993 F.3d at. 391.

\* \* \* \*

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Aaron's motion. *Rollins*,

53 F.4th at 359. Aaron was convicted of conspiracy to possess with intent to distribute methamphetamine, a crime that involved her participation in an international conspiracy to traffic between five and fifteen kilograms of methamphetamine. (Dkt. #974 ¶ 3). Aaron's offense mandates a ten-year-minimum sentence, which reflects the seriousness of the crime and deters future criminal conduct. Aaron asks the Court to release her notwithstanding the statutory minimum sentence and when she has served less than two-thirds of the sentence imposed by this Court. Granting Aaron's request would not reflect the seriousness of her offense, promote respect for the law, or provide just punishment for her offense. Nor would it adequately deter future criminal conduct or protect the public.

Further, this Court's reasons for denying her first motion for compassionate release show why Aaron continues to remain a danger to the community today:

> [Aaron] continues to present a danger to the community based on the totality of the circumstances. Aaron pleaded guilty to participating in a drug-trafficking conspiracy involving large amounts of methamphetamine originating in Mexico and a dangerous cartel. (Dkt. #1041 ¶¶ 5–8, 11). And this was not Aaron's first offense. To the contrary, she has a substantial criminal history that includes burglary, possession of a controlled substance, credit card abuse, fraudulent use of identification, and forgery. (Dkt. #1041 ¶¶ 29–38).

(Dkt. #1216 at 15).

Because Aaron has failed to show that there are extraordinary and compelling reasons to reduce her sentence, her motion must be denied. Even if Aaron had made this showing, the Court would still find that her motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

## IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). Defendant Christy Aaron has failed to meet her burden for each requirement, and her Motion for Reduction in Sentence Pursuant to the First Step Act of 2018 [Under] 18 USC 3582 (c)(1)(A)(i) 1B1.13, (Dkt. #1226), and Motion for Reconsideration of Deviation of Compassionate Release and Sentence Reduction, (Dkt. #1236), are therefore **DENIED**.

**So ORDERED and SIGNED this 4th day of March, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE